# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MONAVIE, INC. and MONAVIE, LLC,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00395-DN<br><br>District Judge David Nuffer |

Plaintiff Starr Indemnity & Liability Company ("Starr") initiated this action for declaratory judgment against Defendants MonaVie, Inc. and MonaVie, LLC (collectively "MonaVie"), alleging that MonaVie's liability insurance policies with Starr exclude recovery for two pending class action lawsuits against MonaVie.[1] Starr moved for summary judgment on the grounds that coverage is barred under its policies by the (1) Prior Notice Exclusion; (2) Specific Event Exclusion; and (3) Anti-Trust Exclusion.[2] Starr further argues that punitive damages and other relief sought in the pending lawsuits is uninsurable by law and if any coverage is recoverable, it is limited to $1,000,000 under the prior litigation exclusions.[3] Finally, Starr asserts that any defense costs incurred should be repaid by MonaVie.[4] Andrew Harbut and Lisa

---

[1] Complaint for Declaratory Judgment ("Complaint"), docket no. 2, filed May 23, 2014.

[2] Motion and Memorandum of Law in Support of Plaintiff/Counterclaim Defendant's Motion for Summary Judgment ("Motion for Summary Judgment"), docket no. 90, filed May 25, 2018.

[3] *Id.*

[4] *Id.*

Pontrelli ("Plaintiff Intervenors") filed an opposition,[5] and Starr replied.[6] Based upon the Prior Notice Exclusion, the Motion for Summary Judgment is granted.

**Contents**

Background ........................................................................................................................ 2
Undisputed Facts ............................................................................................................. 4
    The Policies ................................................................................................................ 5
    *Quixtar* and *Oliver* Lawsuits .................................................................................... 9
    *Parker* and *Pontrelli* Lawsuits ............................................................................... 12
Summary Judgement Standard ..................................................................................... 17
Discussion ...................................................................................................................... 18
    The plain language of the Policies' Prior Notice Exclusion allows Starr to exclude
        coverage for *Parker* and *Pontrelli* based on related Wrongful Acts in *Oliver* ..... 19
    MonaVie is required to pay Starr for its defense costs .................................................. 21
Order…. .......................................................................................................................... 22

# BACKGROUND[7]

Starr issued two successive liability policies—Resolute Portfolio for Private Companies Policy No. SISIFNL20071412 ("2012 Policy") and Resolute Portfolio for Private Companies Policy No. SISIFNL20071413 ("2013 Policy") (collectively, "Policies")—to MonaVie.[8] The Policies each provide $10,000,000 in liability coverage, subject to the terms, conditions, and exclusions contained in the Policies.[9]

Under the 2012 Policy, MonaVie reported *Parker, et al. v. MonaVie, Inc., et al.* ("*Parker*") to Starr.[10] *Parker* is a putative class action brought by consumers of MonaVie's juice products, alleging that MonaVie and its distributors made false and misleading representations

---

[5] Memorandum in Opposition to Motion for Summary Judgment ("Opposition"), docket no. 92, filed Aug. 2, 2018.

[6] Memorandum of Law in Reply and in Further Support of Plaintiff/Counterclaim Defendant's Motion for Summary Judgment ("Reply"), docket no. 101, filed Aug. 23, 2018.

[7] For additional background of the procedural filings for this case, see Memorandum Decision and Order at 1-3, docket no. 74, filed Nov. 17, 2017.

[8] Motion for Summary Judgment at 1.

[9] *Id*.

[10] *Parker et al. v. MonaVie, Inc., et al.* ("*Parker*"), No. 12-cv-1983 TJH, (C.D. Cal. Feb. 26, 2013). *Parker* was transferred to the District of Utah on July 10, 2017. *See* No. 2:17-cv-764-DN (D. Utah).

by falsely promoting the health benefits of its juices.[11] Under the 2013 Policy, MonaVie reported *Pontrelli v. MonaVie, Inc., et al.* ("*Pontrelli*"),[12] which is another putative class action complaint brought by consumers, alleging false advertising in connection with MonaVie's multilevel marketing scheme and false claims related to the health benefits of the juices and the benefits of becoming a MonaVie distributor.[13]

 *Parker and Pontrelli* were not the first lawsuits to be brought against MonaVie. Prior to the inception of the Policies, in 2008 and 2010 MonaVie was named as a defendant in two other cases. In *Quixtar Inc. v. MonaVie, Inc., et al.* ("*Quixtar*"), a competitor alleged false advertising and unfair trade practices against MonaVie based on the promotion of false medical benefits of its juice products.[14] In *Oliver v. MonaVie, Inc., et al.* ("*Oliver*"), consumers brought a class action against MonaVie alleging false and misleading advertising in connection with MonaVie's multilevel marketing scheme of its juices and claims that its juices prevent and treat illnesses.[15]

 Starr initiated this case when it filed its Complaint against MonaVie, alleging that coverage is not available under the Policies for the *Parker* and *Pontrelli* lawsuits.[16] Although MonaVie answered the Complaint,[17] it ultimately defaulted by failing to participate and defend

---

[11] Complaint ¶ 3 at 2, docket no. 2.

[12] *Pontrelli v. MonaVie, Inc., et al.* ("*Pontrelli*"), No. 2:13-cv-04649-WJF-MF, (D.N.J. Dec. 9, 2013). *Pontrelli* was transferred to the District of Utah on October 27, 2017. *See* No. 2:17-cv-1215-DN (D. Utah).

[13] Complaint ¶ 4 at 2–3.

[14] *Quixtar Inc. v. MonaVie, Inc., et al.*, No. 2:08-cv-209-BSJ (D. Utah 2008); Motion for Summary Judgment, Ex. E, *Quixtar* Complaint ¶ 5 at 3.

[15] *Oliver v. MonaVie, Inc., et al.*, No. CV-2010-644-1 (Ark. Cir. Ct., Miller Cnty. 2010); Motion for Summary Judgment, Ex. F, *Oliver* Complaint ¶ 6 at 3.

[16] *See* Complaint. The complaint initially addressed 3 lawsuits—*Parker*, *Pontrelli*, and *Gonzalez*. However, the *Gonzalez* lawsuit was subsequently dismissed with prejudice. *Gonzalez v. MonaVie, Inc., et al.*, No. CIVDS1309111 (Cal. Super. Ct. 2013).

[17] Defendant's Answer and Counterclaim, docket no. 14, filed July 7, 2014.

itself in the proceedings.[18] Starr moved for default judgment against MonaVie.[19] Meanwhile, Plaintiff Intervenors, claimants in *Parker* and *Pontrelli*, sought to intervene to protect their interests in the potential insurance proceeds.[20] The motion to intervene was granted and the motion for default judgment was denied.[21] Starr now seeks summary judgment.

## UNDISPUTED FACTS[22]

1.      On or about May 23, 2014, Starr initiated this case when it filed the Complaint against MonaVie.[23]

2.      Starr seeks declaratory judgment that coverage is not available for two related lawsuits submitted to Starr for coverage by MonaVie.[24]

3.      The particular lawsuits Starr seeks to disclaim are *Parker* and *Pontrelli*.[25]

4.      *Parker* and *Pontrelli* arise out of claims that MonaVie engaged in a multilevel marketing scheme which made misrepresentations as to, *inter alia*, the purported health benefits of MonaVie beverages.[26]

---

[18] Motion for Entry of Default Against Defendants MonaVie, Inc. and MonaVie, LLC, docket no. 44, filed Dec. 22, 2016; Order Granting Entry of Default Against Defendants MonaVie, Inc. and MonaVie, LLC, docket no. 65, entered July 12, 2017.

[19] Motion for Default Judgment Against Defendants MonaVie, Inc. and MonaVie, LLC, docket no. 67, filed Aug. 1, 2017.

[20] Motion by Andrew Harbut and Lisa Pontrelli to Intervene as of Right or, In the Alternative, for Permissive Intervention, docket no. 45, filed Dec. 30, 2016.

[21] Memorandum Decision and Order, docket no. 74, filed Nov. 17, 2017.

[22] The following Undisputed Facts is taken from the facts asserted in the parties' briefing. All material facts asserted by the parties for which no dispute was raised or supported are considered undisputed for purposes of summary judgment. FED. R. CIV. P. 56(e)(2).

[23] Motion for Summary Judgment ¶ 1 at 2; Opposition at 3–4. *See also* Complaint, docket no. 2, filed May 23, 2014.

[24] Motion for Summary Judgment ¶ 2 at 2; Opposition at 3–4. *See also* Complaint, docket no. 2, filed May 23, 2014.

[25] Motion for Summary Judgment ¶ 3 at 2; Opposition at 3–4. *See also Parker*, supra note 10 and *Pontrelli*, supra note 12.

[26] Motion for Summary Judgment ¶ 4 at 2; Opposition at 4–6; Reply at 3; *See also Parker*, supra note 10 and *Pontrelli*, supra note 12.

5.     *Parker* and *Pontrelli* were not the first lawsuits against MonaVie. *Quixtar* and *Oliver* also involved similar claims.[27]

## The Policies

6.     On or about May 1, 2012, MonaVie executed a contract with Starr for liability insurance coverage for certain categories of claims ("2012 Policy").[28]

7.     The covered "Policy Period" for the 2012 Policy was May 1, 2012, through May 1, 2013.[29]

8.     Under the 2012 Policy:

"Insurer" refers to Starr;[30]

"Insured" refers to MonaVie;[31] and

"Company" refers to MonaVie.[32]

9.     The 2012 Policy provides, in pertinent part, that:

[Starr] shall pay on behalf of the [MonaVie] the Loss ("Loss") arising from a Claim ("Claim") first made during [May 1, 2012 – May 1, 2013] (or Discovery Period, if applicable) against [MonaVie] for any Wrongful Act ("Wrongful Act"), and reported to [Starr] in accordance with the terms of this policy.[33]

10.     The 2012 Policy defines *Claim* as any:

(1) written demand for monetary, non-monetary or injunctive relief made against [MonaVie]; (2) judicial administrative or regulatory proceeding, whether civil or criminal, for any monetary, nonmonetary or injunctive relief commenced against

---

[27] Motion for Summary Judgment ¶ 5 at 2–3; Opposition at 6–10; Reply at 5–6; *See also Quixtar*, supra note 14 ¶¶ 12–20, 23, 27, 41–61 at 8 and *Oliver*, supra note 15 ¶¶ 1–3 at 1–2.

[28] Motion for Summary Judgment ¶ 6 at 3; Opposition at 6–10. *See also* Motion for Summary Judgment, Exhibit I, Policy No. SISIFNL20071412 ("2012 Policy").

[29] Motion for Summary Judgment ¶ 11 at 3; Opposition at 6–10. *See also* 2012 Policy at 3.

[30] 2012 Policy at 12.

[31] 2012 Policy ¶ 2(f) at 25.

[32] Motion for Summary Judgment ¶¶ 8–10 at 3; Opposition at 6–10. *See also* 2012 Policy at 3, 13.

[33] Motion for Summary Judgment ¶ 14 at 3; Opposition at 6–10; 2012 Policy ¶ 1(C) at 24.

[MonaVie], including any appeal therefore, which is commenced by: (i) service of a complaint or similar pleading . . . ."[34]

11.     The 2012 Policy defines *Loss* as:

(1) damages, settlements or judgments; (2) pre-judgment or post-judgment interest; (3) costs or fees awarded in favor of the claimant; (4) punitive, exemplary or the multiplied portion of any multiple damages awards, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages; . . . and (6) Defense Costs.[35]

12.     The 2012 Policy excludes from the definition of *Loss*:

(i) any amounts for which [MonaVie] is not legally liable; (ii) any amounts which are without legal recourse to [MonaVie]; . . . (iv) fines and penalties except as provided for in [the definition of Loss above]; (v) matters which may be deemed uninsurable under applicable law; or (vi) any amounts paid or incurred in complying with a judgment or settlement for non-monetary or injunctive relief, but solely as respects [MonaVie].[36]

13.     *Wrongful Acts* are defined (in pertinent part) as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission, or act by [MonaVie]."[37]

14.     *Defense Costs* are defined as:

(1) reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a Claim;
(2) premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond;
(3) reasonable and necessary fees, costs, charges or expenses incurred in response to any extradition or similar proceeding brought against [MonaVie] in connection with a Claim; and,
(4) any fees, costs, charges or expenses incurred by [MonaVie] at the specific request of [Starr] to assist [Starr] in the investigation, defense or appeal of a Claim.[38]

---

[34] Motion for Summary Judgment ¶ 22 at 4; Opposition at 10; 2012 Policy ¶¶ 2(a)(1)–2(a)(2)(i) at 24–25.

[35] Motion for Summary Judgment ¶ 23 at 4–5; Opposition at 10; 2012 Policy ¶ 2(h) at 26.

[36] Motion for Summary Judgment ¶ 24 at 5; Opposition at 10; 2012 Policy ¶ 2(h) at 26.

[37] Motion for Summary Judgment ¶ 28 at 6; Opposition at 10. *Compare* 2012 Policy ¶ 2(l)(3) at 27–28 with 2013 Policy ¶ 2(l)(3) at 23.

[38] Motion for Summary Judgment ¶ 29 at 6; Opposition at 10. *Compare* 2012 Policy ¶ 2(d) at 14 *with* 2013 Policy ¶ 2(d) at 9.

15.     On or about May 1, 2013, MonaVie executed a second contract with Starr for liability insurance coverage for certain categories of claims ("2013 Policy").[39]

16.     The Policy Period for the 2013 Policy was May 1, 2013, through June 30, 2014.[40]

17.     The terms *Insurer*, *Insured*, *Company*, *Loss*, *Claim*, *Wrongful Acts*, and *Defense Costs* are defined identically in the 2012 and 2013 Policies, notwithstanding their different Policy Periods.[41]

18.     The Policies provide that "[i]n the event and to the extent that [MonaVie] shall not be entitled to a payment of Defense Costs under the terms and conditions of this policy, such payments by [Starr] shall be repaid to [Starr] by [MonaVie], severally according to their respective interests."[42]

19.     Both Policies also exclude from coverage any Loss in connection with any Claim fitting certain exclusions.[43]

20.     Specifically, the Policies include a Prior Litigation Exclusion, which excludes any Losses in connection with any Claim:

> alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 6 of the Declarations as respects this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which [MonaVie] had notice, including any Claim alleging or derived from the same or essentially the same facts, or the same or related

---

[39] Motion for Summary Judgment ¶ 15 at 4; Opposition at 6–10. *See* Motion for Summary Judgment, Exhibit J, Policy No. SISIFNL20071413 ("2013 Policy") at 3, 19-33.

[40] Reply at 2, docket no. 101, filed Aug. 23, 2018. *See also* 2013 Policy at 2, Endorsement 11 at 49.

[41] Motion for Summary Judgment ¶ 18 at 4; Opposition at 10. *Compare* 2013 Policy at 3, 8, 19–33 *with* 2012 Policy at 3, 24–38.

[42] Motion for Summary Judgment ¶ 30 at 6; Opposition at 10. *Compare* 2012 Policy ¶ 6 at 18 *with* 2013 Policy ¶ 6 at 13.

[43] Motion for Summary Judgment ¶ 25 at 5; Opposition at 10; 2012 Policy ¶ 3 at 28–31.

Wrongful Act(s), as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation[.][44]

21.     The Policies also include a Prior Notice Exclusion, that excludes any Losses in connection with any Claim:

alleging, arising out of, based upon, or attributable to the same or essentially the same facts alleged, or to the same or related Wrongful Act(s) alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, before the inception date of this policy as set forth in Item 2 of the Declarations, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time[.][45]

22.     The Prior Notice and Prior Litigation Exclusions in the 2012 Policy are set forth identically in the 2013 Policy, notwithstanding their different Policy Periods.[46]

23.     The 2013 Policy also contains two additional exclusions: (1) Anti-Trust Exclusion; and (2) Specific Event Exclusion.[47]

24.     The Anti-Trust Exclusion provides, in pertinent part:

This policy shall not cover any Loss in connection with any Claim alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: . . . unfair trade practices . . . provided, however, that this exclusion shall apply only to [MonaVie].[48]

---

[44] Motion for Summary Judgment ¶ 26 at 5; Opposition at 10. *Compare* 2012 Policy ¶ 3(f) at 28 *with* 2013 Policy ¶ 3(f) at 23.

[45] Motion for Summary Judgment ¶ 27 at 5; Opposition at 10. C*ompare* 2012 Policy ¶ 3(g) at 29 *with* 2013 Policy ¶ 3(g) at 24.

[46] Motion for Summary Judgment ¶ 21 at 4; Opposition at 10. *Compare* 2012 Policy at 28–29 *with* 2013 Policy at 23–24.

[47] Motion for Summary Judgment ¶ 31 at 6; Opposition at 10; 2013 Policy, Endorsement 5 at 44, and Endorsement 9 at 48.

[48] Motion for Summary Judgment ¶ 32 at 6–7; Opposition at 10; 2013 Policy, Endorsement 5 at 44.

25.     The Specific Event Exclusion provides, in relevant part:

This policy shall not cover any Loss in connection with . . . any Claim alleging, arising out of, based upon, or attributable to any act, circumstance, or situation that is the same or substantially similar to those alleged or set forth in any Event.[49]

26.     The Specific Event Exclusion defines Event as:

Matters referenced in Note K.4., K.5., K.6., K.6. of the Consolidated Financial Statements and Report of Independent Certified Public Accountants Mona Vie, Inc. and Subsidiaries for Fiscal Year End December 31, 2011 and December 31, 2010 (dated June 27, 2012).[50]

27.     Note K.6. of the Financial Statements and Report refers to *Oliver*.[51]

### *Quixtar* and *Oliver* Lawsuits

28.     *Quixtar* was filed on or about March 18, 2008 – far in advance of the Policies.[52]

29.     MonaVie reported *Quixtar* to its then insurance carrier, Zurich.[53]

30.     The *Quixtar* plaintiffs alleged that "MonaVie and its distributors, among other things, falsely advertise the health benefits of its products . . . ."[54]

31.     The *Quixtar* plaintiffs further alleged that "MonaVie's products are sold through a multilevel marketing distribution system . . . ."[55]

32.     *Oliver* was filed on December 16, 2010.[56]

---

[49] Motion for Summary Judgment ¶ 33 at 7; Opposition at 10; 2013 Policy, Endorsement 9 at 48.

[50] Motion for Summary Judgment ¶ 34 at 7; Opposition at 10; 2013 Policy, Endorsement 9 at 48.

[51] Motion for Summary Judgment ¶ 35 at 7; Opposition at 10. *See also* Motion for Summary Judgment, Ex. K, Consolidated Financial Statements and Report of Independent Certified Public Accountants MonaVie, Inc. and Subsidiaries for Fiscal Year End December 31, 2011 and December 31, 2010 (dated June 27, 2012) at 24, K(6) (describing a class action lawsuit filed against MonaVie on December 16, 2010 in the Circuit Court of Miller County, Arkansas).

[52] Motion for Summary Judgment ¶ 36 at 7; Opposition at 10. *See also* Motion for Summary Judgment, Ex. E, *Quixtar* Complaint, generally.

[53] Motion for Summary Judgment ¶ 38 at 7; Opposition at 10–11; Defendant's Answer and Counterclaim ¶ 61 at 8, docket no. 14, filed July 7, 2014.

[54] Motion for Summary Judgment ¶ 37 at 7; Opposition at 10–11; Reply at 3–5; *Quixtar* Complaint ¶ 1 at 2.

[55] Motion for Summary Judgment ¶ 39 at 7; Opposition at 11; Reply at 3–5; *Quixtar* Complaint ¶ 25 at 8.

33.     MonaVie tendered *Oliver* to its insurance carrier at the time, Allied World.[57]

34.     The *Oliver* Class Action Complaint ("*Oliver* Complaint") identified its

prospective class as follows:

> All individual residents of the state of Arkansas who purchased MonaVie
> Products before January 1, 2011. Excluded from the Class are: (1) Individuals
> who, at any point, have served as a Distributor for [MonaVie]; (2) [MonaVie] and
> all directors, officers, employees, partners, principals, shareholders and agents of
> [MonaVie]; (3) Persons or entities who timely opt-out of this proceeding using the
> correct protocol for "opting-out" that will be formally established by this Court;
> (4) Any and all Federal, State and/or Local Governments, including, but not
> limited to their Departments, Agencies, Divisions, Bureaus, Boards, Sections,
> Groups, Councils and/or any other subdivision, and any claim that such
> governmental entities may have directly or indirectly; (5) Any currently-sitting
> Arkansas State Court Judge or Justice, and the current spouse and all other
> persons within the third-degree of consanguinity to such judge/justice.[58]

35.     The *Oliver* Complaint identified 16 questions of law and fact common to the class

as follows:[59]

> a.     "Have Defendants engaged in an overarching scheme between themselves
> and their Distributors to wrongfully profit by creating or tacitly approving
> false and/or misleading advertisements and statements about the health
> benefits of Mona[Vie] Products?"
>
> b.     "Was the purpose of the Mona[Vie] Scheme to increase sales of
> Mona[Vie] Products and thus the profits of the Scheme members?"
>
> c.     "Ha[s] [MonaVie] created false or misleading advertisements and/or
> statements about Mona[Vie] Products which were made public?"
>
> d.     "Ha[s] Mona[Vies'] Distributors created false or misleading
> advertisements and/or statements about Mona[Vie] Products which were
> made public?"

---

[56] *Oliver,* supra note 15; Reply at 2.

[57] Motion for Summary Judgment ¶ 52 at 9; Opposition at 16; Defendant's Answer and Counterclaim ¶ 62 at 9.

[58] Motion for Summary Judgment ¶ 53 at 9–10; Opposition at 16. Motion for Summary Judgment, Ex. F, *Oliver* Complaint ¶ 43at 19.

[59] Motion for Summary Judgment ¶ 54 at 10–11; Opposition at 16. *Oliver* Complaint at 19–21.

e. "Ha[s] [MonaVie] ever been aware of the production and/or publication of false or misleading advertisements or statements about Mona[Vie] Products?"

f. "Ha[s] Mona[Vie] affirmatively approved false or misleading advertisements and/or statements about Mona[Vie] Products?"

g. "Ha[s] Mona[Vie] tacitly approved what they knew to be false or misleading advertisements and/or statements about Mona[Vie] Products?"

h. "If [MonaVie was] aware of false or misleading advertisements or statements being created and publicized by their Distributors about Mona[Vie] Products, did [MonaVie] take appropriate action based on that knowledge?"

i. "Did [MonaVie] intend for customers to rely on false or misleading advertisements or statements when considering the purchase of Mona[Vie] Products?"

j. "Did [MonaVie] conceal, suppress or omit material information about the proven medical benefits of Mona[Vie] Products?"

k. "Did [MonaVie] have a duty to be honest and forthright about the proven benefits of Mona[Vie] Products with consumers?"

l. "Did [MonaVie] allow their trademark or corporate identity to be used on false or misleading advertisements or statements about Mona[Vie] Products?"

m. "Are the representations by [MonaVie] and the Distributors about the content of Mona[Vie] Products accurate?"

n. "Are the representations by [MonaVie] and the Distributors about the nutritional contents of the Mona[Vie] Products accurate?"

o. "Are the representations by [MonaVie] and the Distributors about the nutritional content of the Mona[Vie] Products provable by generally accepted, laboratory-based scientific analysis?"

p. "Are [MonaVie's] sales tactics deceptive or unconscionable?"

36.    *Oliver* centered on allegations that MonaVie utilized a multilevel marketing scheme to make false and misleading claims about the health benefits of its products. [60]

### *Parker* and *Pontrelli* Lawsuits

37.    *Parker* was filed on November 13, 2012,[61] during the 2012 Policy.[62]

38.    The *Parker* plaintiffs are not and have never been parties to the 2012 policy.[63]

39.    *Parker* was a class action suit filed "on behalf of [Parker] and all others similarly situated,"[64] and also "on behalf of a sub-class of Missouri residents who purchased MonaVie Products for the purpose of personal consumption . . . ."[65]

40.    The *Parker* plaintiffs alleged that MonaVie utilized "a multilevel marketing scheme that disseminate[d] false and misleading representations that the Products provide[d] certain clinically-proven health benefits . . . ."[66]

41.    The First Amended Class Action Complaint in *Parker* ("*Parker* Amended Complaint") included a section entitled Common Factual Allegations.[67]

42.    The first portion of the Common Factual Allegations in the *Parker* Amended Complaint, entitled "False Immune System Claims," sets forth allegations of false and

---

[60] Motion for Summary Judgment ¶ 55 at 11; Opposition at 16–17; Reply at 6, 9–12. *Oliver* Complaint ¶¶ 1–6 at 1–4.

[61] Motion for Summary Judgment ¶ 56 at 11; Opposition at 17; Reply at 2. Motion for Summary Judgment, Ex. G, *Parker* Complaint. An amended complaint was filed on February 26, 2013, *see* Motion for Summary Judgment, Ex. B, *Parker* First Amended Class Action Complaint ("*Parker* Amended Complaint").

[62] Motion for Summary Judgment ¶ 12 at 3; Opposition at 6–10.

[63] Motion for Summary Judgment ¶ 13 at 3; Opposition at 6–10; *see also* 2012 Policy, generally.

[64] *Parker* Complaint ¶ 52 at 18.

[65] *Parker* Complaint ¶ 53 at 19.

[66] Motion for Summary Judgment ¶ 57 at 11; Opposition at 17–18; Reply at 6, 9–12. *Parker* Complaint ¶ 1 at 2.

[67] Motion for Summary Judgment ¶ 58 at 11; Opposition at 17–18. Motion for Summary Judgment, Ex. B, *Parker* Amended Complaint ¶¶ 17–50 at 8–18.

misleading representations made by MonaVie regarding the health benefits their products purportedly provide to customers' immune systems.[68]

43.     The second portion of the Common Factual Allegations in the *Parker* Amended Complaint, entitled "False and Deceptive Use of the Oxygen Radical Absorbance Capacity Scale," sets forth allegations of false and misleading representations made by MonaVie regarding the health benefits their products purportedly provide to customers as a source of antioxidants.[69]

44.     The third portion of the Common Factual Allegations in the *Parker* Amended Complaint, entitled "Misleading Claims Based on Polyphenol Content," sets forth allegations of false and misleading representations made by MonaVie regarding the health benefits their products purportedly provide to customers as a source of antioxidants, specifically with regards to the polyphenol content therein.[70]

45.     In sum, the Common Factual Allegations set forth in the *Parker* Amended Complaint, and underlying the claims asserted therein, are based on allegations that MonaVie, through its marketing, made false and/or misleading claims as to the health benefits of its products.[71]

---

[68] Motion for Summary Judgment ¶ 59 at 11; Opposition at 17–18. *Parker* Amended Complaint ¶¶ 17–33 at 8–13, and ¶¶ 17–50 at 8–18.

[69] Motion for Summary Judgment ¶ 60 at 11–12; Opposition at 17–18. *Parker* Amended Complaint ¶¶ 34–46 at 13–16, and ¶¶ 17–50 at 8–18.

[70] Motion for Summary Judgment ¶ 61 at 12; Opposition at 17–18. *Parker* Amended Complaint ¶¶ 47–50 at 17–18, and ¶¶ 17–50 at 8–18.

[71] Motion for Summary Judgment ¶ 62 at 12; Opposition at 18; Reply at 6, 9–12. *Parker* Amended Complaint ¶¶ 57–61.

46.     The Parker Amended Complaint describes eight questions of law and fact

common to the members of its putative class, which are substantively similar to questions a, b, c,

j, k, l, m, and o in *Oliver*'s Complaint, respectively:[72]

> a.      whether MonaVie engaged in an overarching scheme between itself and
>         its distributors to wrongfully profit by creating and approving false and/or
>         misleading advertisements and statements about the health benefits of the
>         products;
>
> b.      whether the purpose of the MonaVie scheme is to increase sales of the
>         Products and, thus, the profits of all participants in the scheme;
>
> c.      whether Defendants created false or misleading advertisements and/or
>         statements about the Products that were made public;
>
> d.      whether MonaVie concealed, suppressed, or omitted material information
>         about the lack of proven benefits of the Products;
>
> e.      whether MonaVie had a duty to be honest and forthright with consumers
>         about the lack of proven benefits of the Products;
>
> f.      whether MonaVie allowed its trademark or corporate identity to be used
>         on false and misleading advertisements or statements about the Products;
>
> g.      whether the representations about the content of the Products by
>         Defendants were accurate; and
>
> h.      whether the representations about the nutritional contents of the Products
>         by Defendants are provable by generally accepted, laboratory-based
>         scientific analysis.

47.     The factual allegations set forth in *Parker* arise from the same multilevel

marketing scheme which disseminated false and misleading representations regarding the

purported health benefits of MonaVie that underlay the *Oliver* claims.[73]

---

[72] Motion for Summary Judgment ¶ 54 at 10–11, ¶¶ 64–72 at 12–13; Opposition at 18–21. *Compare Parker*
Amended Complaint ¶ 55 at 19–20 *with Oliver* Complaint ¶ 45 at 19–20.

[73] Motion for Summary Judgment ¶ 73 at 13; Opposition at 20–21; Reply at 6, 9–12. *Compare Parker* Complaint
¶¶ 1–10 at 2–4 and ¶¶ 17–50 at 8–18 *with Oliver* Complaint ¶¶ 1–6 at 1–4 and ¶¶ 23–42 at 10–18.

48.     *Pontrelli* was filed after *Parker*, on or about August 1, 2013,[74] during the 2013 Policy Period.[75]

49.     The *Pontrelli* plaintiffs are not and have never been parties to the 2013 Policy.[76]

50.     *Pontrelli* is a class action suit filed "on behalf of [*Pontrelli*] and all other similarly situated individual residents of the State of New Jersey . . . ."[77]

51.     The section of the *Pontrelli* Amended Complaint entitled "Statement of Facts" contains 37 paragraphs purporting to assert underlying facts supporting *Pontrelli*'s claims.[78]

52.     Approximately 20 of those paragraphs are substantially similar to portions of the *Oliver* Complaint.[79]

53.     Of the remaining 17 paragraphs describing the facts underlying the *Pontrelli* claims,

    a.     6 paragraphs describe, in general terms, the supplement industry and/or MonaVie products;[80]

    b.     2 paragraphs primarily refer to prior litigation against MonaVie and the findings therein;[81]

---

[74] Motion for Summary Judgment ¶ 74 at 13; Opposition at 20–21. Motion for Summary Judgment, Ex. H, *Pontrelli* Complaint. An amended complaint was filed on December 9, 2013, *see* Motion for Summary Judgment, Ex. C, *Pontrelli* First Amended Class Action Complaint.

[75] Motion for Summary Judgment ¶ 19 at 4; Opposition at 10.

[76] Motion for Summary Judgment ¶ 20 at 4; Opposition at 10; *see also* 2013 Policy, generally.

[77] *Pontrelli* Complaint ¶ 6 at 4.

[78] Motion for Summary Judgment ¶ 76 at 13; Opposition at 20–21. Motion for Summary Judgment, Ex. C, *Pontrelli* Amended Complaint ¶¶ 19–55 at 6–19.

[79] Motion for Summary Judgment ¶ 77 at 13; Opposition at 20–21. *Compare Pontrelli* Amended Complaint, Ex. C ¶¶ 25, 27–36, 38–39 at 7–14, and ¶¶ 47, 49–53 at 16–18 *with* Oliver Complaint, Ex. F ¶¶ 23, 25–35, 37–42 at 11–18.

[80] Motion for Summary Judgment ¶ 79 at 14; Opposition at 20–21. *See also Pontrelli* Amended Complaint ¶¶ 19–24 at 6–7.

[81] Motion for Summary Judgment ¶ 80 at 14; Opposition at 20–21. *See also Pontrelli* Amended Complaint ¶¶ 40, 43 at 14–15.

c.      2 paragraphs describe plaintiff's individual experiences of, *inter alia*, purchasing and using MonaVie products after relying upon MonaVie's marketing materials, and thereafter not receiving any of the claimed benefits purportedly provided by those products;[82] and

d.      3 paragraphs provide further examples of, and/or MonaVie's knowledge of, the misleading health claims made by MonaVie's marketing.[83]

54.      None of the 37 paragraphs setting forth the facts underlying the *Pontrelli* claims materially distinguishes the underlying acts alleged from those alleged in *Oliver*.[84]

55.      The Proposed Class definition set forth in the *Pontrelli* Amended Complaint is substantially similar to that set forth in *Oliver*'s Complaint, aside from the state in which the residents reside.[85]

56.      The *Pontrelli* Amended Complaint describes 16 questions of law and fact common to the members of its putative class.[86]

57.      The 16 common questions of law and fact identified in the *Pontrelli* Amended Complaint are substantively identical to the 16 common questions of law and fact asserted in *Oliver*.[87]

---

[82] Motion for Summary Judgment ¶ 81 at 14; Opposition at 21; Reply at 6, 9–12. *See also Pontrelli* Amended Complaint ¶¶ 54–55 at 18–19.

[83] Motion for Summary Judgment ¶ 82 at 14; Opposition at 21. *See also Pontrelli* Amended Complaint ¶¶ 37, 46, 48 at 13, 16–17.

[84] Motion for Summary Judgment ¶ 83 at 14; Opposition at 21–22; Reply at 6, 9–12. *Compare Pontrelli* Amended Complaint, generally, *with Oliver* Complaint, generally. MonaVie argues that the cases are distinguishable because *Oliver* involves Arkansas residents and *Pontrelli* involves New Jersey residents. However, the factual allegations regarding MonaVie's actions are the same.

[85] Motion for Summary Judgment ¶ 84 at 14; Opposition at 22; Reply at 6, 9–12. *Compare Pontrelli* Amended Complaint ¶ 57 at 19 *with Oliver* Complaint ¶ 43 at 19.

[86] Motion for Summary Judgment ¶ 85 at 15; Opposition at 22. *See also Pontrelli* Amended Complaint ¶ 58 at 19–21.

[87] Motion for Summary Judgment ¶ 86 at 15; Opposition at 22; Reply at 6, 9–12. *Compare Pontrelli* Amended Complaint ¶¶ 58(a)–(p) at 19–21 *with* Oliver Complaint ¶¶ 45(a)–(p) at 20–21.

58.     The factual allegations set forth in the *Pontrelli* Amended Complaint arise from the same multilevel marketing scheme which disseminated false and misleading representations regarding the purported health benefits of MonaVie that underlay the *Oliver* claims.[88]

## SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[89] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[90] In determining whether there is a genuine dispute as to a material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[91]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[92] "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."[93] However, a party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts or speculation."[94]

---

[88] Motion for Summary Judgment ¶ 87 at 15; Opposition at 22–23; Reply at 6, 9–12. *Compare Pontrelli* Amended Complaint at ¶¶ 1–8 at 2–3 and ¶¶ 19–55 at 6–19 *with Oliver* Complaint ¶¶ 1–6 at 1–4 and ¶¶ 23–42 at 10–18.

[89] FED. R. CIV. P. 56(a).

[90] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[91] *Id.*

[92] *Id.* at 670–71.

[93] FED. R. CIV. P. 56(c)(1).

[94] *Colony Nat'l Ins. Co. v. Omer*, No. CIV 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006)).

## DISCUSSION

Starr raises several arguments in support of its Motion for Summary Judgment,[95] all of which depend on the terms of the Policies. "An insurance policy is merely a contract between the insured and the insurer."[96] "[B]ecause an insurance policy is a classic example of an adhesion contract," Utah courts have long held that "insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance."[97] However, when "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[98]

Plaintiff Intervenors argue that the Policies' language is ambiguous because certain terms are not explicitly defined.[99] However, the "mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous."[100] "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'"[101] Plaintiff Intervenors have not suggested any reasonable, alternative interpretations of the Policies at issue. As a result, Plaintiff Intervenors have not established that the Policies' language is ambiguous. Therefore, the Policies will be interpreted based upon their plain meaning.

---

[95] Motion for Summary Judgment, 15–27.

[96] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[97] *Morden v. XL Specialty Ins.*, 177 F. Supp. 3d 1320, 1327 (D. Utah 2016) (quoting *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521–22 (Utah 1993)) (internal quotation marks omitted).

[98] *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134, 1141.

[99] Opposition at 32.

[100] *Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1262 (11th Cir. 2000) (quoting *Jefferson Ins. Co. v. Sea World*, 586 So.2d 95, 97 (Fla. 5th DCA 1991).

[101] *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269, 1275 (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139 and *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 14, 28 P.3d 669).

**The plain language of the Policies' Prior Notice Exclusion allows Starr to exclude coverage for *Parker* and *Pontrelli* based on related Wrongful Acts in *Oliver*.**

The Policies include a Prior Notice Exclusion that excludes "any Losses in connection with any Claim alleging, arising out of, based upon, or attributable to the same or essentially the same facts alleged, or to the same or related Wrongful Act(s) alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given . . . ."[102] The Policies define Loss, Claim, and Wrongful Act identically.[103] The parties agree that *Parker* and *Pontrelli* are "Claims" under the Policies.[104] The parties also do not dispute that *Parker, Pontrelli,* and *Oliver* are "Wrongful Acts" under the Policies.[105] Instead, Plaintiff Intervenors contend that the three lawsuits are not "related."[106]

Courts, however, have defined the term "related" as encompassing any kind of connection or relationship.[107] Based upon this definition, *Parker, Pontrelli,* and *Oliver* clearly arise from the same Wrongful Acts and necessarily have a connection or relationship. As a result, the cases are "related."

Although both *Quixtar* and *Oliver* were reported prior to the *Parker* and *Pontrelli* cases, the *Oliver* case alone provides sufficient prior notice to trigger the Prior Notice Exclusion and exclude *Parker* and *Pontrelli* from coverage. *Oliver* was filed in December 2010, before MonaVie entered into the Policies with Starr. *Parker* and *Pontrelli* were filed during the 2012 and 2013 policy periods, respectively. Both the *Parker* and *Pontrelli* cases are based on

---

[102] Undisputed facts, *supra* at ¶ 21.

[103] Undisputed facts, *supra* at ¶ 17.

[104] Opposition at 1.

[105] Undisputed facts, *supra* at ¶ 13, 36, 40, 47; *see also* Opposition at 30 (conceding that Wrongful Acts underlie *Oliver, Parker* and *Pontrelli*).

[106] Opposition at 26-32.

[107] See discussion about definition of "related," *Morden v. XL Specialty Ins.,* 177 F. Supp. 3d 1320, 1331 (D. Utah 2016), *aff'd in part, rev'd in part and remanded,* 903 F.3d 1145 (10th Cir. 2018).

allegations against MonaVie for engaging in a multilevel marketing scheme that involved misrepresentations about the health benefits of its juice products. Both cases contain substantially similar allegations to *Oliver*, with some being identical. *Oliver* is undisputedly a prior reported Claim, and the *Parker* and *Pontrelli* claims arise out of, are based upon, or are attributable to the same or related Wrongful Acts alleged in *Oliver*.

Plaintiff Intervenors argue that because *Oliver* was a class action suit filed only for Arkansas residents, that this geographic difference makes *Parker* and *Pontrelli* different enough from *Oliver*, such that they are not "related."[108] However, *Oliver's* location does not make it unrelated to the Wrongful Acts alleged in the *Parker* and *Pontrelli* lawsuits. The Tenth Circuit Court of Appeal's recent opinion in *Morden v. XL Specialty Insurance*[109] supports this interpretation.

*Morden* involved a claim for liability insurance coverage.[110] The insurer sought declaratory judgment that it had no obligation to pay the claim under the plain terms of the policy. The District Court denied the insurer's motion for summary judgment to exclude coverage based on an Interrelated Wrongful Acts provision.[111] The Tenth Circuit reversed, holding that a prior Securities and Exchange Commission ("SEC") case and the *Morden* case constituted Interrelated Wrongful Acts, and therefore, precluded coverage. Notwithstanding differences between the SEC and *Morden* cases, the Tenth Circuit held that they were sufficiently similar because they shared "common threads" and the Wrongful Acts were

---

[108] Opposition at 32.

[109] *Morden v. XL Specialty Insurance*, 903 F.3d 1145 (10th Cir. 2018).

[110] *Id.* at 1146–47.

[111] *Id.* at 1342–43.

committed by the same entity, using the same techniques, and against the same type of victims.[112]

The Interrelated Wrongful Acts provision is *Morden* is similar to the Prior Notice Exclusion here—both exclude from coverage claims "based on" or "arising out of" the same or related facts.[113] As in *Morden*, sufficient common threads exist between *Oliver*, *Parker*, and *Pontrelli* to find that they are "related." MonaVie was the defendant in all three lawsuits and it allegedly used the same marketing scheme when selling its juice products to consumers. Indeed, the *Oliver* Complaint alleged a nationwide marketing scheme, not a scheme based solely in one geographic location.[114] As a result, the Arkansas class location in *Oliver* does not create a difference in victims of the alleged scheme; it simply limited which victims would be class members. Overall, the three lawsuits contain the common threads of a multilevel marketing scheme that involved misrepresentations about the health benefits of MonaVie's juice products, making them "related" Wrongful Acts. Consequently, the Prior Notice Exclusion applies and *Parker* and *Pontrelli* are excluded from coverage. Because summary judgment is appropriate based on the Prior Notice Exclusion, the remainder of the arguments raised by Starr need not be addressed.

### MonaVie is required to pay Starr for its defense costs.

The Policies provide that "[i]n the event and to the extent that [MonaVie] shall not be entitled to a payment of Defense Costs under the terms and conditions of this policy, such payments by [Starr] shall be repaid to [Starr] by [MonaVie], severally according to their

---

[112] *Id.* at 1152.

[113] *Compare Morden*, 903 F.3d at 1151 *with* Undisputed Facts, supra at ¶ 21.

[114] Reply at 10–12; Motion for Summary Judgment, Ex. F, *Oliver* Complaint ¶ 11 at 6.

respective interests."[115] Plaintiff Intervenors oppose Starr's request for defense costs on the basis that Starr should be required to provide coverage for *Parker* or *Pontrelli*.[116] They do not dispute that under the terms of the Policies, MonaVie must repay the associated defense costs if coverage is not required.[117] Because *Parker* and *Pontrelli* are excluded for coverage, Starr is entitled to recoup its defense costs from MonaVie.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Starr's Motion for Summary Judgment[118] is GRANTED.

IT IS FURTHER ORDERED that Starr is awarded its Defense Costs incurred in *Parker* and *Pontrelli* against MonaVie in an amount to be determined by subsequent motion.

Dated March 15, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[115] Motion for Summary Judgment at 27; Opposition at. *See also* 2012 Policy ¶ 6 at 18; 2013 Policy ¶ 6 at 13.

[116] Opposition at 40.

[117] Undisputed Facts, *supra* at ¶ 18.

[118] Docket no. 90.